IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cv-01303-DDD-KLM

JULIE SMITH,

    Plaintiff,

v.

USAA FEDERAL SAVINGS BANK,

    Defendant.

---

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

Julie Smith was delinquent on the credit card account she had opened with USAA Federal Savings Bank ("USAA"), so USAA called her nearly 500 times in six months to collect on the debt. Ms. Smith sued USAA, alleging liability under a federal statute prohibiting automated phone calls, the TCPA, and Colorado's common law tort of invasion of privacy. USAA moves for summary judgment, alleging that its calling system is not prohibited by the federal statute and that Ms. Smith, in any event, consented to it contractually. It further argues that its behavior is not considered invasion of privacy under Colorado law and that the Colorado claim must be dismissed absent the federal claim. For the reasons described below, summary judgment is granted with respect to both claims.

### LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*,

- 1 -

514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict for SRSA, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party, bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

## DISCUSSION

### I. TCPA claim

#### A. Application of the TCPA to USAA's communications

The Telephone Consumer Protection Act (TCPA) prohibits "mak[ing] any call (other than a call made . . . with the prior express consent of the called party) using any automatic dialing system or an artificial or prerecorded voice (iii) to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). As defined in that statute, an automatic dialing system is "equipment which has the ability— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic telephonic dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1167 (2021).

The parties agree that USAA's device does not automatically produce telephone numbers, but they dispute whether the TCPA allows its device to "accept a preproduced list of telephone numbers . . . and then

- 2 -

use[] an internal random number generator to determine the order in which to call those numbers, and store[] that order for later use." Doc. 49 at 8. Ms. Smith cites dicta in a *Facebook* footnote, in explaining how a random generator might "store" a number, notes that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Facebook*, 141 S.Ct. at 1172 n. 7. According to Ms. Smith, this means that the TCPA prohibits using a random number generator to select from a list of phone numbers that was not automatically generated. Doc. 49 at 8. USAA disputes this and argues that *Facebook* only prohibits that equipment that makes "indiscriminate calls to the public" rather than devices that make "targeted calls linked to specific accounts," even if those devices randomly select the order in which to make calls. Doc. 55 at 5.

The weight of authority supports USAA's interpretation. "Footnote 7 merely addressed how an autodialer could both 'store' and 'produce' telephone numbers without rendering those two terms superfluous . . . . Nothing in the opinion suggests that the Court intended to define and autodialer to include the generation of any random or sequential number." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1235-1236 (9th Cir. 2022). "The Court was not suggesting . . . that the term 'produce' includes randomly selecting from a database of non-randomly collected phone numbers. This would conflict with the Court's overall conclusion that a system which merely stores and dials phone numbers is not an Autodialer." *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 395-396 (8th Cir. 2022).

**B. Consent**

That USAA has the correct interpretation of the TCPA on that point is insufficient to dispose of this case because the parties agree that the phone calls featured pre-recorded messages, which are separately prohibited under the TCPA. Summary judgment is nonetheless warranted because Ms. Smith consented to being contacted. Ms. Smith's contract with USAA provides that:

> You authorize USAA to contact you at the telephone numbers in your profile. For example, we may contact you by telephone when we detect suspicious activity on your accounts, or when we have other important information to convey to you. To revoke this authorization, you may edit your profile by removing telephone numbers on which you do not want to receive such calls.

Doc. 44-3 at 2.

Ms. Smith first argues that while she authorized USAA to contact her, she did not authorize them to contact her via prerecorded calls. Doc. 49 at 24. FCC regulations require express written consent for prerecorded calls when the calls are advertisements or telemarketing messages. 47 C.F.R. § 64.1200(f)(9). FCC regulations do not require express written consent to prerecorded calls from creditors. Further, Ms. Smith provided express written consent to be contacted by USAA, and prerecorded calls are a form of telephone contact. The contract she signed with USAA applies to USAA's communications with her.

Ms. Smith attempted to revoke consent by expressing to USAA over the phone that all further communications should be conducted by mail. Doc. 49 at 8. But Ms. Smith did not, as allowed by the contract, revoke the authorization by editing her online profile. Doc. 44-2 at 16. Nor have the parties argued that they modified the contract to permit oral

revocation of authorization. *Hathaway v. Gen. Mills, Inc.*, 711 S.W. 2d 227, 228 (Tex. 1986) ("Parties have the power to modify their contracts. A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration.").[1] Ms. Smith cites a 2015 FCC regulation permitting called parties to "revoke consent at any time and through any reasonable means." 30 FCC Rcd. 7961, 7989. That regulation "does not address revocation rules mutually adopted by contracting parties," as is the case here. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Ms. Smith's contractual commitments permitted her to revoke consent, but she did not follow the means provided to do so.

## II. Invasion of privacy claim

Summary judgment is granted with respect to Ms. Smith's invasion of privacy claim because she has not produced evidence showing that the calls could reasonably result in extreme mental anguish, embarrassment, humiliation, or mental suffering. "[T]o prevail on a claim for intrusion upon seclusion as a violation of one's privacy, a plaintiff must show that another has intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person." *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1065 (Colo. App. 1998). "[A] creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right to privacy." *Rugg v. McCarty*, 476 P.2d 753, 754 (Colo. 1970). "However, when unreasonable action in pursuing a debtor is taken, which foreseeably will probably result in extreme mental anguish, embarrassment, humiliation or mental suffering . . . then such

---

[1] The contract between Ms. Smith and USAA is adjudicated under Texas law due to a choice of law provision. Doc. 44-3 at 9.

conduct falls within the forbidden area and a claim for invasion of privacy may be asserted." *Id.*

The record reflects that USAA initiated approximately four hundred and seventy-five calls to Ms. Smith over a six-month period. Doc. 49-2. If number of calls were the only requirement to make such a claim, this would likely be enough to go to the jury. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007). But Colorado law requires behavior that will foreseeably cause extreme mental anguish or suffering, not just inconvenience or stress. *Rugg*, 476 P.2d at 754. Ms. Smith testified that the frequent calls to her work phone obstructed her professional contacts' ability to get in touch with her and that they caused significant stress. Doc. 49-4 at 21-24. But this falls short of the extreme mental anguish or mental suffering prohibited under *Rugg*. USAA was allowed to call Ms. Smith to collect upon its debt. The record does not reflect that its calls could foreseeably have caused extreme mental anguish or mental suffering. That USAA had to call nearly 500 times is due to Ms. Smith's failure to pay her debts and her failure to answer all but one of those calls. Doc. 44-1 at 3; *see Chyba v. First Fin. Asset Mgmt.*, No. 12-cv-1721, 2013 U.S. Dist. LEXIS 165276, *11–12 (S.D. Cal. Nov. 20, 2013) ("Where a defendant calls repeatedly and the plaintiff does not answer a large majority of the calls, courts have found that the volume of calls suggests the difficulty of reaching the plaintiff, rather than an intent to harass" under the FDCPA).  Ms. Smith has not shown that USAA's calls rose to the level of hostility required for an invasion of privacy claim, so the claim is dismissed.

**CONCLUSION**

It is ORDERED that:

The MOTION FOR SUMMARY JUDGMENT (Doc. 44) is GRANTED.

DATED: July 11, 2023        BY THE COURT:

_____
Daniel D. Domenico
United States District Judge